Justice of the Court, Cousin Counsel, William Mason and Brian Diaz are two former police officers of the UNLV Police Department. Together between them, they have 56 years of combined police experience. In the summer of 2002, they were falsely accused of misconduct at the university. They were accused of billing or taking time and being paid for time and hours they did not work. This formed the basis of a termination, termination proceedings that were started by the university. At the same time, within approximately the same month, the Nevada Attorney General's Office filed criminal charges against them, a gross misdemeanor in Nevada law, asserting the same violations, the same essential allegations. In the summer of or, I'm sorry, in November of 2002, my clients and I, with my assistance, we challenged the termination only before a Nevada personnel hearing. At that hearing, the hearing officer had limited apparent authority to only rule and decide and here take evidence on the issue of the termination, not the issues associated with the lawsuit that I had filed in May of 2002. He had no authority to address any of my Federal claims or any of the State law claims. He was only there to review whether the termination by the university was appropriate or not. I thought in the course of doing that, he had to make factual findings on whether there were falsehoods in the time sheets, et cetera. He did. He certainly took evidence. There was testimony. Did he make findings on that? He made findings on it, but as I put forth my briefs. We're not in race. We're not talking about race judicata. We're talking about. Issue preclusion. Issue preclusion. He did make findings on that. If I could jump in, I'll try and work back to that. In 2004, the criminal trial finally did go to trial, September 2004. I represented Mason and Diaz at that trial. It lasted two weeks. And at that hearing, which was fully and fairly litigated, where a number of existing and former officers of UNLV testified, including Chief David Hollenbeck, who instituted this entire policy back in the early 80s about using flex time that you heard. The jury of 12 Nevada citizens found them not guilty. I submitted to the court. I was curious about it, because the briefs ended just before the trial. But it doesn't seem to have much to do with this case, because it's a different standard on whether your clients were guilty beyond a reasonable doubt. That's one thing. Secondly, it doesn't set aside the fact that the administrative determination in the state court. And it seems that the law is that that administrative determination is binding. Now, if it is binding, if it does preclude us on that issue, what's left of your case? Isn't it all dependent on a disagreement with what the administrative finding is? The way Judge Proulx ruled and what you're asking is whether issue preclusion, the elements of it I've set forth in Clements, require that the prior hearing, whether administrative or state hearing, had the claimants had a right to fully and fairly litigate their claims. All right. So your argument is, essentially, that there's no issue preclusion because it wasn't a fair and full hearing. That's correct. And that's the argument on which you win or lose that issue. Well, I mean, issue other than the individuals. Well, that, but also under Clements, there seems to be some language as well that looking at the net effect of issue preclusion, I believe there's language from the case that cites that if the issue preclusion has some sort of prejudicial effect or impact. Clearly, in this case, the impact of Judge Proulx's decision for issue preclusion has effectively deprived my clients of a remedy. They're factually innocent. Well, it can't say issue preclusion only counts when it doesn't make any difference. The whole point of issue preclusion is that, you know, of course it's going to be helpful or harmful to one side or the other. The reason, Your Honor, the reason the hearing in November 2002 was not a full and complete hearing. Okay. Now, that's a different thing. If we're going to talk about whether it's a fair hearing, that issue I understand. But that is your issue, that this was not – there's no issue of preclusion because this was not a full and fair hearing. Correct. I mean, it comes down to that determination whether I – whether we had the opportunity for a full and fair hearing. That's our argument that we did not. And why do you say you didn't? At the time the hearing was conducted in November 2002, we did not have David Hollenbeck available. David Hollenbeck was the former chief of police. Now, how does that make the trial unfair because a witness isn't available? Suppose this were a trial in district court. I suppose it would have been a criminal trial. Could you come in afterwards and say that trial wasn't fair because the witness wasn't available? Well, the criminal trial was different because we were able to fully and fairly litigate it. We were able to bring in the officer. I'm saying is it an argument that a trial is not fair because one side or the other doesn't have a witness available? The hearing officer repeatedly throughout that hearing in November 5th of 2002 tried to curtail the nature and quality and type of evidence that we could present. He did not want us to present evidence prior to January 2001, but that was at the very core of our defense. Now, that's a different point from saying a witness wasn't available. But Hollenbeck was not available for the hearing, and we also had other officers as well we were trying to bring in to give testimony about what the prior practice was, because it was that prior practice that my clients were implementing that they were being accused of misconduct. It's a practice that still goes on at UNLV today. Did that evidence come in in the criminal trial? Yes, it did. It was very persuasive evidence at the criminal trials. I paraded a whole stream of existing and former officers up there to talk about the use of flex time. So is your argument, then, that it wasn't a fair hearing because the administrative officer excluded evidence that was critical? Yes. And because he tried to curtail us, and I actually quoted in my brief, from getting into the prior practices of the department, which are core to my client's defenses as to what they were doing with this use of flex time. So that is part of the argument. Judge Proh's decision as well looked at the issue of qualified immunity. It certainly bears the discussion. Okay. Before we get to qualified immunity. Yes, sir. So you say you didn't have a fair hearing because it was limited to events in time improperly. Yes. And that your critical evidence related to the period before the time that the administrative officer considered relevant. That's correct. What did Judge Proh say about that? Judge Proh essentially adopted the findings of the hearing officer. He said there was conclusive evidence of wrongdoing. Of course, this is before the criminal trial. He essentially adopted those findings and almost verbatim in his order as to how the hearing officer ruled. I mean, certainly Judge Proh in the district court was adopting those findings and ruling against this on issue preclusion. And he felt that we had a full and fair hearing and that we presented all our evidence. And, of course, in my opposition to the motion for summary judgment, I did attach the we were able to then get the deposition of David Hollenbeck, who did testify about the use of flex time and how he implemented the program back in the late 1980s. The same practice that my clients were using when they were charged in this conduct in 1902. I thought there was some notion that, as you said, at the criminal trial you had many witnesses on the same point. And I thought one of the – the Judge Proh felt that you didn't bring those witnesses – it wasn't just Hollenbeck, but you could have brought other people if this was an important issue. That's true. The judge did rule in that fashion. And at the hearing in November 2002, there were approximately two or three other existing or former officers that I wanted to bring in. Mind you, I will tell you that when we did the hearing in 2002, it was very limited in the scope. We were not addressing, at least in my mind, I didn't believe the hearing officer had any apparent authority to address any of our Federal claims or our State law claims, only the issue of the termination itself. But Judge Proh felt that you weren't prohibited from bringing in those people. You simply didn't do it. That's his contention. Of course, Hollenbeck was not available. And I've argued that, and he was not available. And I did not get his deposition until two months after the hearing in November 2002. Why wasn't he available? Scheduling. I found that he was traveling back and forth to Indiana a lot. It took us quite some time to get his testimony down. Did you ask for a continuance? No, sir. We did not ask for a continuance. Do you want me to address the immunity issue before? Yes. Well, briefly, Judge Proh had ruled as well that qualified immunity protects Leakey and Murray individually. It's my contention that both of my clients had Federally recognized rights that both these officers knew of or should have known of, essentially a property interest in their job, and that by terminating them, they acted in derogation of those property interests. They are government employees and they are entitled to certain protections. The due process interest is twofold, both procedural and substantive. Essentially, this is one of those cases I would argue that we're looking at as a substantive due process violation of arbitrary and capricious conduct by both Leakey and Murray. Leakey was the chief of police in 2002 and Murray was his deputy chief. These individuals knew that what knew or should have known that what Officer Mason, Sergeant Mason, Sergeant Diaz and Officer Mason were doing was an existing longstanding practice in the department, and yet they still used this false allegation to justify a termination, to rid themselves of them from the department. That, I believe, is the due process violation which they acted in derogation of, and qualified immunity does not protect them or shield them from that exposure. I'll save the balance of my five seconds for any rebuttal unless you have any questions. Thank you, counsel. Good morning, Your Honors. I'm Richard Lindstrom, General Counsel at UNLV and counsel for defendants in this matter. Notwithstanding the argument today, in essence, what they're saying is that the civil rights claims are not the subject of the hearing and, therefore, it wasn't full and fair, in essence, then compounding and confusing res judicata with collateral estoppel, because the district court's ruling was that the material facts, not only the relevant facts, but the material facts concerning the discharge were found at the administrative hearing. That having been done, then the Federal claims all collapsed, notwithstanding the fact that they weren't addressed at the administrative hearing and shouldn't have been. That factual determination which should be given preclusive effect, and I don't think they argue that you do. What do you make, if I could interrupt? What do you make of the fact that a different standard of proof was applied at the administrative level? I mean, I gather that you would argue that we could not give the criminal, the result of the criminal trial, preclusive effect because a different standard of evidence applied, but the administrative tribunal did not apply a preponderance of evidence standard which would have been normally applied if this case had been litigated in the first instance. Well, I think there's settled authority that the Federal courts must give the same preclusive effect that the State courts would give. There's settled Nevada authority that regardless of the standard used, the administrative hearings, if they're full and fair and the matters are actually litigated, will be given preclusive effect. Well, how does that – well, I will take a look at it. But, you know, the administrative – or the hearings officer took great pains to say that in reviewing the actions taken of the employer, it's the duty to – just to determine if there's substantial evidence and to ensure the employer did not act arbitrarily or capriciously. It goes on to say substantial evidence has been defined as evidence which a reasonable mind might accept as adequate to conclusion. It goes on to say preponderance of the evidence to support an administrative decision is not equated with a preponderance of evidence as there may be cases where two conflicting views may be each supported by substantial evidence. So it's an entirely different standard of evidence that the hearings officer was applying. That's true. It's a very deferential standard. That's true. And the Nevada courts could have said, because it's a lower standard applied, we will not give preclusive effect to findings in the administrative arena. However, it's very clear the Nevada law does allow, if there's due process and full hearing, a fair hearing, that preclusive effect will be given. And obviously, that – the difference in standards has always been there. So it's not a question that the Nevada Supreme Court said had some misapprehension as to the standard. So what you're saying is correct. And I guess there could be a rule that was different, but there isn't. As it stands, it doesn't really – I don't want to say that it doesn't matter, but it's a matter of subtle authority that it doesn't matter that it's a different standard. I suppose that makes some kind of sense if they actually have a choice as to how they pursue this. Would they really have a choice? Well, surely. They could have foregone – and in fact, interestingly enough, they did forego the first step. They didn't have their pre-deprivation procedures. They waived that, went straight to the State Personnel Board hearing. They could have actually not done the State Personnel Board. They could have filed the incident action right off the bat. There's no exhaustion-type requirement before bringing their action in district court. So really, I mean, I think the scheme is set up to be beneficial to employees, to get a quick, relatively quick adjudication in the administrative arena. It's a practical matter. It tends to favor employees in that administrative arena to – How about this argument that it wasn't a full hearing because evidence was excluded? Well, it's the nature of any fact-finding procedure that the adjudicator will make calls as to materiality and irrelevance. And I think in this case, the hearing officer found that the evidence about what Hollenbeck did in the past was, I think he said, marginally relevant. And I think Judge Proulx then found basically it wasn't a material fact. And I think the reason for that is kind of obvious. And that is, there was really no contesting the fact that there had been flex time in the past. The factual question at the hearing was, didn't the new chief, Alike, change that? Didn't he issue a memo saying that? Wasn't that memo on the cover of the logbook, and didn't you see that? And those issues were litigated heavily at the administrative hearing, and a factual determination was made that, in essence, these employees didn't take into account the change in the rules and went ahead and conducted their behavior as they did in the past. Now, maybe to a jury that obviated their criminal intent, I don't know what happened in the criminal case. I think the point is it doesn't really matter for purposes of this proceeding. But I can see how you would tell a jury that over and over and over again to try to get a different result in a criminal case. Well, this is a bit unusual, perhaps not unusual, but it's a bit unusual in that the plaintiff apparently took a dual track approach. They filed in state court, and then they also pursued their administrative appeals. But you removed this to federal court. I suppose the normal course of events would have been the state court would have stayed its decision, and the appeal would have gone up to the same district court and been consolidated. But they really didn't have that opportunity, did they here? I'm sure that that's true, that there's a normal course that it would be stayed. I mean, I think the normal course is it would have gone exactly the same way, only it would have been in state court instead of federal court. Well, part of the point you made, I think, in your brief was that they didn't appeal this decision. They didn't appeal the administrative decision. Right. Right. Which the import of that is, though, that it puts it in the category of cases that are subject to review. I mean, I think part of the Nevada Supreme Court's ruling in the past that these administrative determinations will be given preclusive effect was that they were subject to judicial review in a court of general jurisdiction. Now, that doesn't force, of course, a plaintiff or a disappointed party, either one, to go to district court, and they elected not to do that. The odd thing, I think, here is if they had done that, if you had not removed the case, then in the ordinary course, that appeal would have probably been consolidated, not necessarily, but could have been consolidated with this case. But this case would not have been subject to removal had they appealed the decision. Well, no, they would have. They don't appeal the decision. They take a judicial review of the decision. Exactly. Judicial review. I would not have been able to review. If they filed a petition for judicial review of the administrative decision, that's not something that would have been subject to removal. No. But I don't think it would have been necessarily subject to consolidation, either, in the State courts. I mean, I don't, number one, I've never seen that happen. Number two, I don't know that the consolidation would be granted in a case like that because you're on totally different procedural grounds and legal grounds and everything else. I think the assumption that they would have been consolidated in the State courts may not be true. In different cases, that would be, in different States, that would be the normal course. I can't speak to Nevada. Let me go back to a question Judge Thomas asked you about the, what the hearing officer actually decided. The ultimate decision is that based on the findings of fact and conclusions of law, it's hereby adjudged and decreed that substantial, reliable, and probative evidence establishes that the action of the employer in dismissing the employees has been for the good of the public service. And the action is affirmed. Is that the binding conclusion, that there's reliable, substantial, and probative evidence, or is it the findings of fact earlier? I think it's the finding of fact. The findings of fact, because the district court, the Federal district court ruling is that the material facts supporting the claims were decided. So I think the material facts are contained in the findings of fact as opposed to the conclusions of law. Well, this is the ultimate finding in the case, that there's substantial evidence. That's the ultimate decision. Correct. But, I mean, I think the problem is that's a finding of law that goes more to the claim. I mean, if we were saying it had claim preclusive effect, then it, I think, would be looking at that. But if we're looking at the issue preclusion, the issue that starts the whole thing in effect is basically that the employees stole time. I mean, to put it colloquially. Right. But that was based on the substantial evidence standard rather than preponderance standard. That's right. Okay. If you read the ultimate decision into the findings of fact, you would read there's substantial evidence that they did this. That's true, but if we're talking about the legal standard, he was – there's no doubt that he applied the administrative standard. I mean, it would be retaken as a whole. But would you read that into the finding? The finding being there's substantial evidence that they engaged in this conduct. And would you say that that, under State law, has a preclusive effect on the issue of whether they actually did engage in the conduct? True. But, I mean, I think the – I just don't think that the Nevada law giving the preclusive effect centered on the standard applied. I mean, I just don't think it took it into account, as I recall the case. Could you please sit down? I have one question on qualified immunity. It's very – one of the two statutes at issue requires notification. It's very difficult for me to see what's unclear about that statute. Well, I think what – it requires notification before the agency initiates procedures. That's right. In this case, the university was a victim of a crime, makes a criminal referral, which is the same thing as a criminal report to the Attorney General's office. The State Attorney General is conducting a criminal investigation, at which time the university has no notion of when questions are going to be asked, what questions are going to be asked, or even what crimes or who's being investigated. For all the university would have known at that time, they could have been looking at the lieutenant involved above these defendants, the assistant chief or the chief, for that matter. Because a victim of – once you turn it over to a prosecuting agency, you're not in control of that investigation. You don't – it simply is out of the university's hands completely. And such that as soon as the university got the report back from the AG that said we find a crime was committed, we're going to file the charges, then the university took action, provided under our police officer's bill of rights, the chance for them to have notice and a chance to be heard, which is that pre-deprivation due process right that they have to have in order for the termination to be valid to go forward. Now, they – I think it's uncontested that they waived that, declined to have that and went straight to the personnel board proceeding. Okay. Thank you, sir. Thank you. When the university made the allegation or discovered that there's potential of this misconduct, they did conduct their own in-house investigation in September of 2001 that lasted approximately two to three weeks before they referred it to the Nevada Attorney General's office. I think it's important. There are exhibits within the record, memos from September 11th of 2001 and I think September 18th of 2001, which document the fact that they did conduct an investigation. They did not notify my clients that this investigation had been conducted. That's a state statute that says they have to notify your clients. Is there a due process right to that? I think – well, that implicates, I think, certainly a procedural due process right as well. In the absence of a state statute, would there be a Federal right to notification before there's an investigation? A Federal right to notification? No. No. No, I wouldn't say there was. You said the state statute creates a due process, Federal due process. It does, but there's also what I believe a substantive due process claim in light of the fact that these allegations were false, and they knew this or should have known that at the time they conducted their own in-house investigation. Did they interrogate them? They did not interrogate them. They did not formally notify them. They were even looking at them. All right. If there are any other questions, I appreciate your time. Thank you very much. Thank you, counsel. Thank you, sir. The case is heard. It will be submitted. Thank you.
judges: Reinhardt, Thomas, Restani